## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SHAYNA HERSZAGE-FELDAN, *on behalf of herself and all others similarly situated,*

      Plaintiff,

v.

YESHIVA UNIVERSITY,

      Defendant.

Case No.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Shayna Herszage-Feldan ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant Yeshiva University ("Yeshiva" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.    Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.    Some colleges and universities offer an educational product without

access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3.    Yeshiva primarily offers students an in-person educational experience featuring traditional, face-to-face lecture and laboratory courses, and offers an extremely limited selection of courses in online-only formats.

4.    Plaintiff, an undergraduate student during the Spring 2020 semester, paid tuition and fees to enroll in Yeshiva's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the Spring 2020 semester.

5.    Plaintiff's paid-for experience was cut short midway through the Spring 2020 semester, when that in-person educational experience was taken away from Plaintiff and other students at Yeshiva.

6.    In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Yeshiva, like many other colleges and universities, transitioned to online-only distance learning, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7.    As a result, all on-campus education, services, and amenities were no longer available to Yeshiva students for the remainder of the Spring 2020 semester.

8.    Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Yeshiva refused to provide a prorated refund of tuition or fees tied to its on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.

9.    Accordingly, Yeshiva's students lost the benefits of the bargain for services and the experience they paid for but could no longer access or use following the school's transition to remote learning in March 2020.

10.    By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, Yeshiva breached its contracts with its students or was otherwise unjustly enriched.

11.    It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.    It is unfair and unlawful for Yeshiva to retain tuition and fees for campus-based in-person education and services not being provided and to pass the financial losses on to its students.

13.    Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Yeshiva's decision to retain the tuition and fees, paid by Plaintiff and other students

for in-person education, experiences, access to campus, and services, without providing such for the entire duration of the Spring 2020 semester.

14.    Plaintiff brings this class action for damages and restitution resulting from Yeshiva's retention of the tuition and fees paid by Plaintiff and the other putative Class members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Plaintiff and other putative Class members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## **PARTIES**

15.    Plaintiff, Shayna Herszage-Feldan, is an adult, who at all relevant times, is a resident and citizen of the State of New York.  She paid tuition and fees for the Spring 2020 semester. Halfway through the Spring 2020 semester, Plaintiff was forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16.    Plaintiff was an undergraduate student enrolled at Yeshiva for the Spring 2020 semester, which was scheduled to run from approximately January 21, 2020, to May 21, 2020. Plaintiff did not have access to the campus after mid-March

2020 because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition and fees for an in-person educational experience during the Spring 2020 semester, the benefits of which she lost because Yeshiva closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17.    Defendant, Yeshiva, is a private university founded in 1886. Yeshiva offers over 60 undergraduate majors and graduate degree programs and enrolls students from dozens of states and foreign countries. Yeshiva operates four campuses in New York City: three in Manhattan and one in the Bronx.  Defendant is a citizen of New York.

## JURISDICTION AND VENUE

18.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19.    This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District and soliciting students residing in this District to attend its institution.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## FACTUAL ALLEGATIONS.

21.    Prior to the COVID-19 pandemic, Yeshiva had a longstanding tradition of offering most of its courses in face-to-face classroom settings on campus. In accordance with this prior course of conduct, Yeshiva scheduled the vast majority of its Spring 2020 courses to be in-person and on-campus.

22.    Yeshiva's online course enrollment system displays the delivery type (online or in-person) of each class before a student registers.  Therefore, when Plaintiff and Class members used this system to enroll in classes for the Spring 2020 semester, they knew whether they were enrolling in face-to-face or online classes and made informed choices about whether to spend their tuition dollars on in-person or online modes of course delivery.

23.    To enroll in classes, Yeshiva students are required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on or about January 21, 2020, and end on or around May 22, 2020.[1]

---

[1] *See, e.g., Undergraduate Academic Calendar Spring 2020*, Yeshiva University, https://www.yu.edu/sites/default/files/inline-files/ 031020%20UG%20FALL%202019-SPRING%202020_5.pdf

24.     Tuition for the Spring 2020 semester was approximately $21,100 for full-time undergraduate students.[2] Tuition ranged between approximately $570 and $1,905 per credit hour for graduate students in on-campus classes, depending on degree program.[3]

25.     Face-to-face learning is a central component of Yeshiva's educational product, as reflected in the academic policies that Yeshiva requires students to follow.

26.     For example, during their undergraduate career, students in all three Yeshiva undergraduate schools—Yeshiva College,[4] Stern College,[5] and Syms School of Business[6]—may only count four online courses toward a bachelors' degree.

---

[2] *2019-20 Tuition and Fees*, Yeshiva University, https://www.yu.edu/osf/tuition-fees/undergraduate-2019-20 (last accessed Feb. 19, 2024).

[3] *Graduate Student Financial Aid and Tuition*, Yeshiva University, https://web.archive.org/web/20210411135212/https://www.yu.edu/osf/tuition-fees/graduate (captured Apr. 11, 2021).

[4] *Academic Advising*, Yeshiva University, https://web.archive.org/web/20160326192807/http://www.yu.edu/academic-advising/undergraduate-men/faqs/ (captured Mar. 26, 2016) ("Students may count a maximum of 4 online courses toward their undergraduate degrees").

[5] *Academic Advisement*, Yeshiva University, https://web.archive.org/web/20160612225210/https://www.yu.edu/advising/stern-academic-advising/faq#faq13 (captured Jun. 12, 2016) ("Students may count a maximum of four (4) online courses toward their undergraduate degrees").

[6] *Academic Advising: FAQs & Registration*, Yeshiva University, https://web.archive.org/web/20200804144222/https://www.yu.edu/academic-advising/syms-faqs (captured Aug. 4, 2020) ("Students may count a maximum of 4 online courses towards their undergraduate degrees").

27.    Yeshiva's policy establishes the expectation that the vast majority of classes must (and will) be conducted in face-to-face, on-campus formats.

28.    Moreover, Yeshiva uses its marketing materials, course catalog, and other bulletins to solicit students for its in-person, on-campus educational programs. In these materials, Yeshiva repeatedly stresses that in-person, face-to-face interaction is an essential component of students' educational experience:

    a.    Yeshiva promised that its undergraduate schools "combine rigorous academics, unsurpassed Jewish Studies (men's [and] women's) and a nurturing Jewish environment. Students choose from varied courses in the liberal arts and sciences and business, together with comprehensive Jewish studies taught by a talented and diverse faculty. Small class settings encourage intellectual intimacy and creativity."[7]

    b.    In 2019, Yeshiva "announced the grand opening of the YU Innovation Lab, a collaborative learning space focused on creating a hands-on entrepreneurial environment" connecting Yeshiva students to Israeli-based tech start-ups.[8]

---

[7] *New to YU: Classes, Courses, and Credits*, Yeshiva University, https://web.archive.org/web/20161111143426/http://www.yu.edu/student-life/new-to-yu/classes-courses-credits/ (captured Nov. 11, 2016) (parenthetical in original).

[8] *Yeshiva University Inaugurates New YU Innovation Lab*, PR Newswire (May 21, 2019), https://www.prnewswire.com/news-releases/yeshiva-university-inaugurates-new-yu-innovation-lab-300854071.html.

    c.   Yeshiva highlighted that its Graduate Program of Advanced Talmudic Studies "provides advanced students with an opportunity to study in a full-day traditional *beit midrash* [study hall] environment."[9]

29.    Yeshiva promotes on-campus facilities and resources as a significant benefit of enrollment in in-person classes, telling prospective students that "[e]ach campus provides residence, dining, athletic and extracurricular facilities. Students can avail themselves to our four-campus library system, which includes a broad range of collections and services and takes full advantage of the resources and tools provided by modern technology."[10]

30.    Yeshiva also highlights the services provided by the Office of Student Life, promising that "[w]e strive to meet your needs from before your arrival on campus until graduation day and beyond. Whether it is helping you manage your educational, social, or general welfare, or planning fun-filled and exciting events, we offer many different services to help you meet your needs."[11]

---

[9]    *Stern College for Women: About*, Yeshiva University, https://web.archive.org/web/20191218092700/https://www.yu.edu/stern/about (captured Dec. 18, 2019).

[10]    *Campuses*, Yeshiva University, https://web.archive.org/web/20190917040711/https://www.yu.edu/campuses (captured Sep. 17, 2019).

[11]    *Office of Student Life — Undergraduate*, Yeshiva University, https://web.archive.org/web/20200507102101/https://www.yu.edu/osl    (captured May 7, 2020).

31.    Yeshiva's descriptions of student life to prospective students depict a wide array of services and facilities available on its campuses, such as "Kosher dining and fitness centers on every campus. Guest lecturers such as Rabbi Jonathan Sacks and Tommy Hilfiger. Student-run councils and clubs. Men's and women's sports teams. Whether you're looking for a peaceful corner of the library to study or a jam-packed cafeteria to hang out with friends, you'll find it here, at Yeshiva University."[12]

32.    Moreover, Yeshiva promotes the location of its campus as a compelling reason for students to decide to attend. Yeshiva tells prospective students that:

> Living and studying in the cultural capital of the world is an invaluable enhancement to any education. New York and its five boroughs offer experiences unlike any other city in the world: from Carnegie Hall to Yankee Stadium; from the Metropolitan Museum of Art to the Empire State Building; from the Lower East Side to the Upper West Side; from Harlem to Wall Street. New York has been called a laboratory of humanity. The plethora of kosher restaurants, synagogues and Jewish culture also make New York City an ideal setting for the country's premier Jewish university.[13]

33.    When enrolling in classes for the Spring 2020 semester, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

---

[12] *Undergraduate Student Life*, Yeshiva University, https://web.archive.org/web/20200401155723/https://www.yu.edu/undergraduate-student-life (captured Apr. 1, 2020).

[13] *Life in NYC*, Yeshiva University, https://web.archive.org/web/20190930210230/ https://www.yu.edu/admissions/visit-yu/life-nyc (captured Sep. 30, 2019).

34.     Plaintiff and members of the Class were also required to pay assorted fees (collectively, the "Mandatory Fee") to enroll in classes.  For undergraduate students, the Mandatory Fee totaled $1,350 per semester.[14] Yeshiva allocates a portion of the Mandatory Fee to the Office of Student Life, which funds student council budgets, student organizations, and other on-campus events.[15]

35.     Plaintiff and members of the Class paid their tuition and Mandatory Fee in the Spring 2020 semester to enjoy everything Yeshiva offered them, including on-campus services and facilities and an in-person education throughout the entire Spring 2020 semester.

36.     Despite Plaintiff and Class members paying Spring 2020 semester tuition and fees to attend Yeshiva for an in-person and on-campus educational experience, Yeshiva failed to provide the promised in-person education and facility access for the duration of the entire Spring 2020 semester, instead providing only online instruction for more than half of the Spring 2020 semester.

---

[14] *2019-20 Tuition and Fees*, Yeshiva University, https://www.yu.edu/osf/tuition-fees/undergraduate-2019-20 (last accessed Feb. 19, 2024).
[15] *See, e.g.,* Judah Stiefel, *YU Raises Student Activity Fee*, YU COMMENTATOR (Sep. 17, 2017), https://yucommentator.org/2017/09/yu-raises-student-activity-fee.

**A.    In Response to COVID-19, Yeshiva Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

37.    In a message to students on March 4, 2020, Yeshiva's president announced that an undergraduate student, who had been in quarantine at his family's house since February 27, had tested positive for COVID-19.[16]

38.    In response to the news, Yeshiva cancelled all undergraduate and graduate classes scheduled to be held between March 4, 2020 and March 13, 2020.[17]

39.    When classes resumed on March 16, 2020, Yeshiva offered only remote instruction.[18] Remote-only instruction continued for the remainder of the Spring 2020 semester.

40.    On or around March 11, 2020, Yeshiva cancelled or postponed all face-to-face events and activities, including those planned by student organizations.[19]

---

[16] *COVID-19 Info: March 4, 2020*, Yeshiva University (Mar. 4, 2020), https://www.yu.edu/covid-19-info/updates/0304 (last accessed Feb. 19, 2024).

[17] *See, e.g., Undergraduate Academic Calendar Spring 2020*, *supra* note 4 (documenting closure of Beren and Wilf campuses); Yitzchak Carroll, YU to Close Through End of Week as Coronavirus Cases Increase, .. , *COVID-19 Info: March 11, 2020*, Yeshiva University (Mar. 11, 2020), https://www.yu.edu/covid-19-info/updates/0311 (last accessed Feb. 19, 2024) (stating that "[w]e have already cancelled all in-person classes for this week).

[18] *COVID-19 Info: March 11, 2020*, *supra* note 17.

[19] *Id.*

41.    On March 25, 2020, Yeshiva announced it was would not reopen residence halls to students after the Pesach [Passover] break, effectively closing on-campus housing to students starting the first week of April 2020.[20]

42.    On or around the same time, Yeshiva closed all campus facilities to students, including libraries.[21]

43.    Yeshiva did not hold any in-person classes between March 3, 2020, and the end of Spring 2020 term. All Spring 2020 classes after March 3, 2020, were only offered in a remote, online format with no in-person, face-to-face engagement between students and faculty.

44.    Most campus facilities and services for which the Mandatory Fee was assessed were also terminated, cancelled, or severely curtailed at or about this time, such as access to the library, recreation center, health and wellness facilities and intramural facilities, as well as student organizations, programs, athletic events, and arts performances.

45.    At the time, Yeshiva acknowledged that the decision to move to remote distance learning dramatically changed Plaintiff's and Class members' educational

---

[20]    *COVID-19 Updates*, Yeshiva University (Mar. 25, 2020), https://web.archive.org/web/20200331215626/https://www.yu.edu/health-alert (captured Mar. 31, 2020).
[21]    *Yeshiva University Libraries*, Yeshiva University, https://web.archive.org/web/20200401191718/https://library.yu.edu/home (captured Apr. 1, 2020) (page header stating "University Libraries are currently closed to maintain health and safety during the COVID-19 emergency");

experiences.  In a March 25, 2020, letter to the campus community, Yeshiva's president wrote "[o]verall, the reports from the 'classrooms' have been very positive, but I know that this is not the Spring semester you imagined."[22]

46.    Yeshiva thus admitted that students did not receive the educational experience that students expected when they paid tuition and the Mandatory Fee for Spring 2020 semester, because of Yeshiva's unprecedented shift to full remote-only education.

## B.    Students Experienced Significant Losses, in Many Cases of Borrowed Funds, as a Result of Yeshiva's Conduct.

47.    At Yeshiva, the median federal loan debt among borrowers who completed their undergraduate degree is $18,250.[23] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for federal student loan borrowers who graduated from Yeshiva is $193.[24]

48.    With the campus shut down for more than half of the semester, Plaintiff and the proposed Class have been deprived of the benefits of the on-campus educational experience as set forth above. Nevertheless, Yeshiva has refused to

---

[22]    *COVID-19 Updates*, Yeshiva University (Mar. 25, 2020), https://web.archive.org/web/20200331215626/https://www.yu.edu/health-alert (captured Mar. 31, 2020).
[23]    *Yeshiva University Tuition & Financial Aid*, U.S. News, https://www.usnews.com/best-colleges/yeshiva-university-2903/paying    (last accessed Feb. 19, 2024).
[24] *Id.*

refund any portion of tuition or the Mandatory Fee, despite not providing the on-campus educational experience and services for which students paid.

49.    Students attending Yeshiva's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in Yeshiva's in-person, on campus educational program.

50.    During the online portion of the Spring 2020 semester, Yeshiva principally used programs by which previously recorded lectures were posted on an online learning management system for students to view on their own, or by virtual Zoom meetings.  Therefore, there was a lack of classroom interaction between students and professors and among students that is instrumental in interpersonal skill development.

51.    The online formats used by Yeshiva did not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

52.    Students were deprived of the opportunity for hands-on, collaborative learning and in-person dialogue, feedback, and critique.

53.    Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a university education, and access to the myriad activities offered by campus life that foster social development, leadership, wellness,

independence, and networking for future careers, are all substantial and material parts of the basis upon which Yeshiva can charge the tuition it charges. Contrary to Yeshiva's promises, these services and facilities were not provided.

54.    Offering classes in-person costs Yeshiva more than offering instruction in remote, online-only formats. For example, this cost difference was evident in 2015 when Yeshiva's Belz School for Jewish Music moved many of its classes to online instruction in an attempt to "cut costs and decrease [Yeshiva's] deficit."[25]

55.    Yeshiva provided students with partial refunds for Spring 2020 room and board fees, *i.e.,* funds that students paid in exchange for services that Yeshiva did not provide.[26] However, Yeshiva has not made a similar offer to refund any portion of the tuition or Mandatory Fee that Plaintiff and Class members paid Yeshiva for in-person educational services which they did not receive during the majority of Spring 2020 semester.

56.    Plaintiff and the Class are therefore entitled to a prorated refund of the tuition and Mandatory Fee they paid Yeshiva for the Spring 2020 semester for the

---

[25] David Rubinstein, *Belz to Downsize, Expand Online*, YU COMMENTATOR (May 11, 2015), https://yucommentator.org/2015/05/belz-to-downsize-expand-online
[26] Yitzchak Carroll, Sruli Fruchter, and Yosef Lemal, *President Berman Announces Refunds in Call with Student Body*, YU COMMENTATOR (Apr. 22, 2020), https://yucommentator.org/2020/04/president-berman-announces-refunds-in-call-with-student-body.

remaining days of that semester after classes moved from in-person to online and facilities were closed.

## CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All Yeshiva University students who satisfied their payment obligations for the Spring Semester 2020 tuition and/or Mandatory Fees who were enrolled in at least one in-person on-campus class (the "Class").

58.    Specifically excluded from the Class are all students who received full Yeshiva-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

59.    Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definition.

60.    **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, Yeshiva reported several thousand students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to Yeshiva and

can be identified through Yeshiva's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

61.    **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

    a.    Whether Yeshiva accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;

    b.    Whether Yeshiva breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person on-campus educational experience and access to campus facilities and services after early March 2020;

    c.    Whether Yeshiva breached its contracts with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fee pertained after early March 2020;

    d.    Whether Yeshiva was unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time Yeshiva

was closed during the Spring 2020 semester, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access to the services and facilities for which tuition and the Mandatory Fee was paid;

e.   Whether Yeshiva intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued campus services for which the Mandatory Fee was intended to pay, all while retaining the tuition and Mandatory Fee paid by Plaintiff and the Class; and

f.   The amount of damages and other relief to be awarded to Plaintiff and the Class members.

62.   **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus educational experience for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that Yeshiva stopped providing for the remainder for the Spring 2020 semester.

63.   **Adequacy of Representation:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other

Class members whom she seeks to represent. Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

64.    **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

65.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Yeshiva, making it impracticable for Class members to individually seek redress for Yeshiva's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual

litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

66.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records.

**FIRST CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

67.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

68.    Plaintiff brings this claim individually and on behalf of the members of the Class.

69.    When Plaintiff and Class members paid Yeshiva tuition and the Mandatory Fee for the Spring 2020 semester, Yeshiva agreed to, among other things, provide an in-person and on-campus educational experience as well as access to campus services and facilities to which the Mandatory Fee they paid pertained

throughout the entire Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into binding implied contracts with Yeshiva.

70.    When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Yeshiva would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins, as well as Yeshiva's history and prior course of providing in-person and on-campus education.

71.    Plaintiff and Class members fully performed their obligations under their implied contracts with Yeshiva by registering for classes and paying tuition.

72.    Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and Yeshiva on the other.

73.    Yeshiva breached its contracts with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience as well as access to campus services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for an on-campus and in-person educational experience and access to these

services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

74.    Plaintiff and the members of the Class have suffered damages as a direct and proximate result of Yeshiva's breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when Yeshiva discontinued in-person classes and closed campus facilities.

75.    Yeshiva should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class member.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

76.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

77.    Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiff and the Class do not have an enforceable contract with Yeshiva regarding the relief requested.

78.    Plaintiff and members of the Class conferred a benefit on Yeshiva in the form of tuition and the Mandatory Fee paid for the Spring 2020 semester. The

payment of this tuition and Mandatory Fee was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

79.    Yeshiva knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

80.    Yeshiva has retained the full benefit of the tuition and Mandatory Fee payments made by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members were owed.

81.    For example, Yeshiva failed to provide Plaintiff and Class members access to many on-campus facilities and services after March 4, 2020, yet Yeshiva assessed Plaintiff and Class members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

82.    Indeed, as a result of closing campus and moving classes online, Yeshiva saved significant sums of money in the way of reduced utility costs, reduced staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work student students, and otherwise.

83.    Upon information and belief, the costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.

84.    As a result of Yeshiva's retention of all the tuition and Mandatory Fee paid by Plaintiff and members of the Class during the period of time Yeshiva was closed, Plaintiff and members of the Class were denied an in-person and on-campus educational experience and access to services and facilities for which the Mandatory Fee was paid. This was unjust and inequitable under the circumstances.

85.    Allowing Yeshiva to retain the full benefit of tuition and Mandatory Fee paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by Yeshiva, unjustly enriched Defendant.

86.    Accordingly, Yeshiva has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fee that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when Yeshiva discontinued in-person classes and closed campus facilities.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)     Awarding such other and further relief as may be just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

A jury trial is demanded on all claims so triable.


Dated: February 27, 2024                    Respectfully submitted,

                                             _/s/ Michael A. Tompkins_____
                                            Michael A. Tompkins
                                            Anthony Alesandro
                                            **LEEDS BROWN LAW, P.C.**
                                            1 Old Country Road, Suite 347
                                            Carle Place, New York 11514
                                            (516) 873-9550
                                            mtompkins@leedsbrownlaw.com
                                            aalesandro@leedsbrownlaw.com

                                            Gary F. Lynch*
                                            Nicholas A. Colella*
                                            **LYNCH CARPENTER, LLP**

1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
nickc@lcllp.com

*pro hac vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*